# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re

DORSEY TRAILER
COMPANY, INC.,

Case No. 04-32662
Chapter 11

## MEMORANDUM DECISION

This Chapter 11 case came before the Court for confirmation of the Fourth Amended Plan filed by Debtor Dorsey Trailer Company, Inc. (DTCI) (Doc. 273),[1] on September 11, 2007, in Montgomery, Alabama. DTCI was present by counsel Von G. Memory, Wachovia Bank was present by counsel Timothy M. Lupinacci, Double A Trailer Sales, Inc., was present by counsel Eric J. Breithaupt, the Bankruptcy Administrator was present by counsel Michael A. Fritz, Sr., and the United States was present by Assistant United States Attorney Patricia Conover. The Bankruptcy Administrator initially recommended that the Plan not be confirmed because quarterly fees had not been paid and all impaired classes had not voted to accept the plan. (Doc. 289). The Debtor subsequently paid the quarterly fees taking that matter out of dispute. All objections to confirmation were resolved at the September 11 hearing, except for the objection of Double A. Trailer Sales. (Doc. 280). Wachovia Bank is in favor of confirmation of the Plan, while Double A objects to confirmation. The parties did not offer evidence, instead opting to file briefs, contending that the dispute was purely legal in nature. On September 26, 2007, briefs were filed by Double A, Wachovia Bank, and the Debtor. (Docs. 295, 296, 297).

---

[1] As the Debtor's Fourth Amended Plan supercedes all previous plans, the Fourth Amended Plan will be referred to as "the Plan."

# I. FACTS

For seventy years, semi-trailers have been manufactured at the Dorsey facility in Elba, Alabama. On December 4, 2000, Dorsey Trailers, Inc. (DTI), filed a petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code in Case No. 00-6792. (Dorsey I). Substantially all of the assets of the DTI Dorsey I were sold to a unit of Freuhauf Trailers, Inc., a competitor. A new corporation known as Dorsey Trailer Company, Inc. (DTCI), was formed to acquire the old Dorsey facilities for the purpose of manufacturing trailers. DTCI filed a petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code on September 14, 2004, initiating this case. (Dorsey II). There is no relationship between the two Dorsey entities; however, they both manufactured semi-trailers using the Elba, Alabama, manufacturing facility.

After filing the petition in Dorsey II, the DTCI began efforts to sell the Elba, Alabama facility. Those efforts were plagued by any number of problems, two of which stand out. First, hazardous materials had been improperly disposed of on the Elba property over the years, creating a serious environmental problem. Second, a purchaser, Trade Land Cattle, LLC, was found for the property; however, after many broken promises and delays, Trade Land Cattle failed to complete the purchase, leaving the Debtor at square one in its efforts to liquidate. The property was later sold to Pitts Enterprises, Inc. The sale to Trade Land Cattle was for $2.4 million, while the sale to Pitts, was for only $2 million. Moreover, the Pitts sale was on terms less favorable, meaning that the net difference to the estate was more than $400,000.[2]

---

[2] In the Pitts transaction, more of the closing costs were born by the estate. Moreover, because the Pitts transaction closed more than two years after the first date set for the Trade Land Cattle sale, more interest had accrued on the Wachovia mortgage.

The Debtor's Plan is one of liquidation, rather than reorganization. That is, the Debtor will not continue in business. The purpose of the Plan of Liquidation is to distribute the proceeds of the sale from Pitts Enterprises and the proceeds of a breach of contract suit against Trade Land Cattle as well as several other minor items. Liquidation plans are significantly different than plans of reorganization in that there is no potential income from ongoing operations to fund the plan. The Debtor has collected a total of $2,342.683.60. (Doc. 273, p. 12). The Plan's sole task is to provide for the disbursement of these proceeds.

The Plan provides for three classes of Administrative claims which total $592,484.53. (Doc. 273). The holders of the Administrative period claims have agreed to accept $492,905.66, in full satisfaction of their claims. This amount is to be paid from two sources. The $200,000.00 damage award collected from Trade Land Cattle, plus a $260,000.00 "carve out" from the sale proceeds ceded by Wachovia.[3] These provisions involve a number of compromises by holders of administrative claim holders.[4]

There are two paths to confirmation. If all classes of creditors accept the plan, confirmation may be had under § 1129(a). If any class fails to accept the plan, then confirmation may only be completed under § 1129(b). As Double A is in its own class and as it has not accepted the plan, then the only available path to confirmation is under § 1129(b), which provides that the Court may not confirm a plan unless it is both "fair and equitable," and does not "discriminate unfairly."

---

[3] The difference between the $492,905.66, to be paid and the $460,000.00, on hand is to be made up by interest earned on the funds.

[4] Under the Plan, $260,000.00, which would otherwise be paid to Wachovia in satisfaction of its secured claim, is to be paid to the holders of administrative claims.

-3-

Against this backdrop, the dispute between Wachovia Bank and Double A Trailer arises. In early 2004, Double A entered into several contracts with Dorsey for the purchase of forty-one semi-trailers. Twenty-six of the trailers had not been delivered as of the filing of the petition in bankruptcy. Double A brought suit for delivery of the trailers in a lawsuit which had been originally filed in the District Court as Case No. 04-CV-464. That civil action was transferred to this Court and assigned Adversary No. 04-3109.

The Adversary Proceeding was a three-cornered battle between Double A, DTCI, and Wachovia Bank. The chief issues were: (1) whether the trailers belonged to DTCI or Double A; and (2) if the trailers did belong to DTCI, whether the claims of Wachovia or Double A had priority. The Adversary Proceeding was "settled" pursuant to an agreement which provided that Double A should post a bond in the amount of $225,977.20, and that it could take possession of the trailers in question. In the event Wachovia was made whole from the proceeds of sales of other assets, Double A was to receive the bond. In the event Wachovia is not made whole, the question of priority remains to be hashed out. As Wachovia will not be made whole under the Plan, the dispute remains.[5]

## II. DOUBLE A'S OBJECTIONS

Double A objects to confirmation of the Plan for two reasons: first, that it violates the absolute priority rule; and second, that it violates the "good faith" clause in the settlement agreement. For the reasons set forth below, the objections of Double A are OVERRULED and

---

[5] Confirmation of the Plan here does not preclude Double A from raising any issues in the Adversary Proceeding. In other words, the Court will determine priority with respect to the trailers in question, or the cash proceeds representing the trailers, without regard to confirmation of the Plan.

-4-

the Debtor's Plan is CONFIRMED AS FILED.

### A. The Claim of Double A

The total amount realized from the liquidation of the Debtor's assets was $2,342,683.60. (Doc. 273, p. 12). Wachovia's claim, as of the date of the petition was $2,279.748.46. (Claim No. 38; Doc. 296, ¶¶ 8,9). Accrued interest on the claim is an additional $456,448.65, for a total of $2,736,197.11.[6] For purposes of the confirmation of the Plan, the lien of Wachovia is senior to the lien of Double A.[7] Therefore, the claim of Wachovia exceeds the value of the collateral.

To determine whether Double A holds a secured claim, we must next look at the definition of a secured claim. Section 506(a) provides, in part, as follows:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.

As the amount owed Wachovia exceeds the value of the collateral, there is no value in the property to which the lien of Double A may attach. Therefore, by operation of § 506(a), Double A does not have a secured claim. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 239 (1989) (stating that under § 506(a), "a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured").

---

[6] Post-petition interest on secured claims is allowed so long as the total amount of the secured claim does not exceed the value of the property securing the claim. §506(b). It therefore follows that Double A is not secured unless Wachovia has a fully secured claim for both its principal, interest and attorneys fees.

[7] The Settlement Agreement provides that "Double A . . . shall be deemed a secured creditor in all of the assets of Dorsey, provided however that the prior perfected security interest in all of the assets of Dorsey by SouthTrust Bank [now Wachovia] is acknowledged, and that the security interest of Double A shall be a second position behind SouthTrust Bank." (Doc. 295, Ex. 1).

-5-

### B. Absolute Priority Rule

Double A also argues that the Plan should not be confirmed because it violates the absolute priority rule, citing 11 U.S.C. § 1129(b)(2)(B). (Doc. 295). Section 1129(b)(2)(B) provides as follows:

> (B) With respect to a class of unsecured claims–
>
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of the value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) the holder of any claim or interest that is junior to the claim of such class will not receive or retain under the plan on account of such junior claim or interest any property.

This provision requires that the Plan either pay unsecured creditors in full, or that the holders of claims junior to unsecured claims receive nothing. As no distribution is to be made to unsecured claims, the Plan clearly does not satisfy § 1129(b)(2)(B)(i); however, no distribution is to be made claims junior to unsecured claims. Therefore, the Plan satisfies the condition of § 1129(b)(2)(B)(ii). For this reason, the objection of Double A, that the absolute priority rule is violated, is without merit.

### B. Settlement Agreement (Good Faith)

Double A contends that confirmation of the Plan will violate the Settlement Agreement, citing a provision of the agreement which calls for the parties to act in good faith. The Bankruptcy Code does not permit the Court to confirm a Plan unless it is proposed in good faith.

-6-

11 U.S.C. § 1129(a)(3). Having examined the Settlement Agreement, the Court concludes that the contractual duty requiring the good faith on the part of the Debtor does not add anything to the existing requirement under § 1129(a)(3). In other words, the requirement of good faith is the same, whether the duty arises pursuant to the settlement agreement or the Bankruptcy Code. Accordingly, the Court will construe the objection of Double A as one under § 1129(a)(3).

Double A contends that the "carve out" provided in the Plan violates the duty of "good faith" in the settlement agreement. (Doc. 273, ¶ 4.01). Double A contends that the carve out harms it by diminishing the recovery to be applied to secured claims by an amount equal to the carve out. Double A inaccurately characterizes the "carve out" as a gift contending that the "gift" somehow improper. This objection lacks merit for two reasons. First, the "carve out" is not a gift; and second, regardless of how it is characterized, under the facts of this case, it would not have any effect upon the rights of Double A.

The "carve out" provided by the Plan resolves any issues under § 506(c). "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extend of any benefit to the holder of such claim." § 506(c).[8] The carve out contained in the Plan is not a gift; rather, it is a reasonable accommodation of competing interests. Neither the Debtor nor Wachovia is obligated to litigate every possible issue "tooth and nail" to avoid a charge of bad faith or making improper gifts. Double A offered no evidence to show that the carve out, under the facts of this case, was in any way improper. Carve outs in Chapter 11 Plans are common place. They

---

[8] Wachovia explains this process in detail it its brief. (Doc. 296, pp. 11-15).

-7-

save the time and expense of holding contested evidentiary hearings on every § 506(c) claim and allow bankruptcy cases to proceed smoothly. The objection of Double A that the carve out is made in bad faith is without merit.

### III. CONCLUSION

The objection to confirmation made by Double A is overruled. First, the Plan does not violate the absolute priority rule, because claims junior to those of Double A are paid nothing. Second, the Plan is not proposed in bad faith. Double A has offered no evidence that the carve out in question is in any way improper. The Court will enter an order confirming the Plan by way of a separate order.

Done this the 20th day of November, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

-8-

Case 04-32662   Doc 298   Filed 11/20/07   Entered 11/20/07 17:16:19   Desc Main
Document      Page 8 of 8